I'm happy to hear argument in our second case, number 15-14-84, Hunter Laboratories v. Commonwealth of Virginia. Good morning, may it please the court. My name is Eric Buescher of Kachet, Petrie and McCarthy. I represent the appellants and the Keatsham plaintiff in the lawsuit below. Today we're here to ask this court to interpret the Virginia Fraud Against Taxpayers Act. In addition to the... I think you better talk about the jurisdictional argument. Fair enough. I'll start there. The complaint in this case, which was originally filed in state court in 2007, alleged that the various defendants had violated the Virginia Fraud Against Taxpayers Act in two independent ways. The first way was a basic overcharge theory, that the state regulation capped the amount that the defendant could charge Virginia's Medicaid program for certain laboratory tests. The second theory of the complaint was that the defendants had also provided deep discounts, often below cost discounts, to various private payers in exchange for a referral of government pay services from those physicians. And that that constituted a kickback of providing remuneration to those doctors and referral sources, which violates the federal anti-kickback statute. The defendants removed the case on the basis of federal question jurisdiction because the allegation that the federal anti-kickback statute had been violated necessarily raised a federal issue, an issue of federal law. That issue was actually disputed in that the defendants denied both providing these sorts of discounts and that providing those discounts would violate the anti-kickback statute. That issue is substantial to the federal system as a whole, given the funds that are spent by the federal government on Medicare and other health care services and the federal government's interest in enforcing consistent regulations nationwide with respect to the interpretation of the anti-kickback statute and the federal regulations related to it. And allowing the federal courts to resolve that issue would not disrupt the balance of federalism between the federal and state courts. Do we know from the complaint whether all of the overcharging and kickback involves Medicaid claims? With respect to this case, those were the only claims at issue were Medicaid claims because the case was only filed in state court. I'm not sure I understand how that necessarily followed. The allegations in the complaint were limited to violations of Virginia Medicaid dollars. Even though there was a federal theory of liability under the anti-kickback statute, providing kickbacks gives rise to a violation of the False Claims Act, be that the federal False Claims Act or the state False Claims Act of various states to the extent they exist and the Virginia Fraud Against Taxpayers Act in this case. But the only claims that would have been at issue had the case gone through a full trial on the merits would have been claims submitted by the defendants to the Commonwealth's Medicaid program. Those could have been false based on violation of federal law or based on violation of Virginia state regulation. But those two categories were not necessarily the same universe of false claims that would have been submitted. With respect to the jurisdiction, this was not raised in the briefing below. Nobody sought to remand the case. The district court did not address this issue. Unfortunately, as you know, jurisdiction is something we have to establish for ourselves. I understand. Neither party wants to say there's no jurisdiction. You are correct, I think, on that front, Judge Motz, and I understand that. But this is an issue where there would have been a dispute of federal law of whether the federal anti-kickback statute prevented the kind of conduct alleged in the complaint. If it did, and if that federal law was violated, then that would give rise to liability under the Virginia Fraud Against Taxpayers Act. Can I just ask to make sure I understand? I thought that the allegation was that they had sort of falsely certified compliance with both the federal and also the state anti-kickback statute. Is that right? The complaint did not allege anything related to a state anti-kickback statute at all. It was simply a false certificate. With respect to the federal anti-kickback statute, it's a false certification of compliance with the law. And the case law for quite some time has been clear that violations or paying kickbacks violating the federal anti-kickback statute gives rise to false claims liability. I'm not sure it's really an implied certification issue. With respect to the state law-based claim, that was not related to kickbacks. That was related to the regulation provides that the most entity could charge Virginia's Medicaid program for certain services, it was capped. But it says defendants' practices are independently unlawful as kickback schemes prohibited pursuant to the federal statute and the state statute. I just don't understand. It's paragraph 96 of your amended complaint? Correct. I just find this very confusing to sort of trace through your complaint and find out exactly what it is you're arguing. Because I read that, and so I thought, aha, I finally understand it. You're saying that there were these false certifications under both of those statutes. And I think that the independent gives rise to an independent violation under violation of the federal anti-kickback statute. I think what the complaint is likely referring to as to the state law would be the Virginia fraud against taxpayers. No, I don't think so. That's the Virginia anti-kickback statute. I mean, it is sort of hard to trace this through on the face of the complaint, right? Where do I look to find the part where it says, what would you point me to? Here is our federal claim necessarily raised. The federal claim necessarily raised is that by providing- Because that's what we have to look at, right? Correct, in the complaint as it was removed by the defendant. How about a JA reference? The initial complaint that was removed by the defendant, the allegation is at paragraph 28 of that complaint. It's JA 71. In this instance, the practices are independently unlawful as kickback schemes strictly prohibited by federal health care programs under 42 U.S.C. 1320A-7B. The allegation is that the defendants provided kickbacks in the form of discounted private rates. Doctor, I will charge you 10 cents for your private pay patients if you will refer me all of your Medicaid patients who I can charge the Commonwealth $42, whatever the numbers may be. Those discounts designed to draw in referral of additional government-paid business are kickbacks under the federal statute under 42 U.S.C. 1320A-7B. That is, again, JA 71. The reason that that gives rise that that necessarily raises a federal issue is that the question of whether those practices alleged in the complaint or had there been a full trial on the merits, however that came out, is a question of federal law, not state law, in terms of whether 42 U.S.C. 1320 was violated, whether that constitutes remuneration, whether that was given to a referral source in exchange for the government-paid business. That is an issue of federal law that applies nationwide to Medicare or Medicaid claims submitted by providers to government pay, government health care entities. With the court's permission, I'd like to move briefly to the merits. Before you do, can I ask you a question about the substantial federal issue of the test? The precedent makes it sound like what we're looking for is kind of a broad, purely legal question that's going to have a lot of precedential effect. What's the kind of big legal question implicated by this kickback issue? I think that there's two answers to that question, Judge Harris. The first, the big legal question is, does this conduct violate the federal law, the provision of discounts in exchange for the referral of government-paid business? Does that violate the federal law? That is something that would be prohibited nationwide, regardless of whether you were talking about Medicare or Medicaid dollars, about Virginia or Nevada. That would be the same nationwide. The second answer, I think, to the question is that what the case law talks about is whether the issue is a substantial issue to the federal system as a whole. When you take a step back to look at the bigger picture of the provision of health care by the federal government in the United States, we're talking about a multibillion-dollar annual expenditures that are made by the federal government, regulations that are implemented by the federal government. The anti-kickback statute requires that the Department of Health and Human Services Office of Inspector General work with the Attorney General and other federal entities to develop regulations surrounding what constitutes a kickback, how to ensure that when the government pays private entities dollars for providing health care services, what they are paying for are medically necessary services, not some other profit scheme that somebody has come up with to gain referral of additional business, simply because it's profitable for that provider. The federal government is certainly, I think, there is a substantial issue within the federal system as a whole as to ensuring that when the federal government pays for health care services, that it pays for only those services that are medically necessary and that are appropriate for the patient who is receiving them. But that sounds to me like a factual determination. I don't think it is a factual determination. You stated the legal principle very well, but I don't know if there's any disagreement. I thought that what we were looking for was a legal principle that was a general federal inquiry that needed to be applied. That's sort of like standard for summary judgment. Nobody disagrees with it. Well, I think that the answer to your question, Judge Motz, is that the defendants in this case denied, one, that they provided these sorts of discounts as a factual issue, but also that even if they provided those sorts of discounts, that that would violate the anti-kickback statute as a legal issue, and that was an issue that the court would have had to determine had the case not settled. Can I ask you just a quick question? This is something that confuses me. But if the court had found that they hadn't made the payments, then the court never would have had to reach the legal question at all, right? So the legal question was raising the alternative, and does that mean that it's not necessarily raised? I think it is necessarily raised, and I think that if you looked at only the factual question of whether these discounts, whether they provided these kinds of discounts, that factual dispute would not necessarily implicate federal law. But if we were able to prove that those discounts were— Right, but what if you weren't? This is a real—is an argument that's raised only in the alternative, does that mean that it is not necessarily raised for purposes of federal question jurisdiction or not? You're saying that even though it's raised in the alternative, the court may never get there. It is still somehow necessarily raised. And let me clarify. I didn't mean to misspeak if I did. I don't believe it is raised in the alternative, either with respect to the state law theory of liability or with respect to the legal versus factual determination that we've discussed. The question of—the factual question of whether discounts were provided is, I agree, a pure factual issue. The question of whether those discounts violated federal law necessarily raises that. And I understand that we're sort of operating at a deficit here because there was no factual determination made because the case settled as to whether those discounts were— How long after removal was this case settled? How long after removal? Right. Seven months approximately? Seven months. At the pleading stage. So it was removed, the defendants filed a motion to dismiss. And you settled it, and now you're fighting over the settlement. Now the divvy up the proceeds. And that is correct, Judge King. And that's what's trying to get us to decide. And that is the merits that I'd like to address, but I'm well over my initial time. You are over your time. Why don't you take three minutes? I'll give you three additional minutes. I'll give you three additional minutes. It's whether it's net proceeds or gross proceeds. That is correct, Judge King. And your position is? That it is the gross proceeds paid to— Gross proceeds. The $1.25 million. Correct. It is the proceeds that the defendant pays to resolve or pay a judgment with respect to the claims that the QTAM plaintiff brings. And so in this case, there was a non-intervened complaint. The only legal theories that were alleged, and the only conduct that was settled, were those legal theories in the QTAM plaintiff's complaint, my client's complaint. Those—there was no alternative theory brought by the Commonwealth of Virginia in an intervened complaint. There was no other payment to the state of North Carolina. There was no payment directly to the federal government for violation of Medicare or submission of false claims with respect to Medicare dollars. The only allegations were related to the Commonwealth's Medicaid program. And the only payment was made to resolve allegations related to the Commonwealth's Medicaid program. In that circumstance, proceeds means the whole thing. In a different circumstance— And the judge said it doesn't. It's net proceeds. And the judge— You wanted $350,000, and he gave you $139,000. That is correct, Your Honor. Now, what happens if we say there's no jurisdiction? We're in a little bit of a conundrum. We would, I think, get remanded to state court at that point. And whether the case would be remanded—it's settled. It's a strange situation whether the case would be remanded to— I don't think—why would we remand if we find there's no jurisdiction? We would just dismiss. It would just be dismissed. Then our only remedy at that point would be to file a suit against the Commonwealth in some forum alleging that they were required to pay $350,000 and underpaid by $211,000. That would require a whole new lawsuit. So you're not without a remedy. I'm not sure where that remedy would lie. But the settlement in this case—and I'll be clear that I think the jurisdiction exists— but the remedy that is available to us today is with this court, not with a Virginia state court or a separate lawsuit. You want to get it over with. Certainly. Certainly. This case was filed in 2007. We're here in 2016, nine years later. We would like to have this done and over with. And with that, I'd like to reserve a couple of minutes. Everybody wants to tell us there's jurisdiction because you want to get it over with. Well, I think that I want to tell you there's jurisdiction because jurisdiction actually exists. Well, you're right. You're saying that's the proper legal— That would be the correct legal outline. Yeah, I understand that. Thank you very much. Thank you. Maybe you better tell us about jurisdiction, too. Absolutely. Good morning, and may it please the Court. My name is Candace Dasher, and I represent the Commonwealth. And as an initial matter this morning, I will address the threshold question of jurisdiction, as this Court brought up to Esponte. As the Commonwealth has addressed in her brief that was submitted to this Court on April 28th, the District Court had jurisdiction over the underlying action because Medicaid is a jointly funded program that is created by federal law, that is broadly governed by federal regulations, which inherently raises significant federal issues that make jurisdiction proper under the four-factor test that is detailed in Grable and Gunn. And as the Commonwealth addressed in her brief in more detail, pursuant to Grable and Gunn, federal jurisdiction lies over the state law claim if the appropriate federal issue is necessarily raised, actually disputed, substantial, and capable of resolution without disrupting the federal-state balance. And the Commonwealth actually agrees with the appellant in this case that there is proper jurisdiction for the federal court. The necessarily raised issue is present here because Medicaid is a jointly funded federal program and, as such, always inherently raises issues of federal law. Quest has at all times disputed the allegations, so we actually disputed prong as met. When courts look to substantiality, they look to whether the issue is an issue to the federal system as a whole. And in this case, Medicaid is always implicated with the federal court and with federal law. And consistent with this court's decision in- Well, if you look at the complaint, the two causes of action are both state law causes of action. Yes, Your Honor. So labeled. So I guess what I'm trying to figure out is when do we decide? Are you saying that any time that Medicaid funds may be involved, there's a federal cause of action? I am saying that when you have a settlement such as you would have under the Virginia Fraud Against Taxpayers Act, that is for a Medicaid fraud settlement, that because Medicaid inherently involves federal and state funds because it is a federally created program and the federal government substantially adds to the Medicaid funding for the state, that it is because of those issues that there are significant federal issues that are always at play in cases where you have a Medicaid recovery. And in that instance, that is where it would be proper for the federal court, even though, yes, the case was brought under a state statute, that it is still proper for the federal court to retain jurisdiction. Now, if it were a different matter where the fraud case did not include Medicaid, let's say it was, I don't know, a case for fraud against a bridge contractor and there was found to be fraud in the government, it was brought under the Virginia Fraud Against Taxpayers Act, just as this case was, but there are no federal dollars that are at play because it's not a jointly funded federal program. And in that case, no, the federal court would not have jurisdiction because there would be no broad-reaching federal issues at play. What portion of the Medicaid Act do you think gives you jurisdiction? I mean, you just, you understand jurisdiction is different than Medicaid benefits. I mean, is another federal statute that you look to besides the Medicaid Act? To support jurisdiction? Yes. I agree with the appellant that when you look at the complaint, that you do have federal issues at play. You have the anti-kickback statute, which the appellant has already addressed, which states that in order to violate the Virginia Fraud Against Taxpayers Act and the theory that was alleged for the pull-through allegations, that you would have to have violated first the federal anti-kickback statute. And in that case, the court would have to decide first if the anti-kickback statute… I'm sorry, why is that? Why would you… First of all, not all of these claims were claimed to be kickbacks. Isn't that correct? That's correct, Your Honor. I mean, the kickback thing was an alternate theory. Yes. That was part of the complaint. The other part were the other claims that were brought under the Virginia Fraud Against Taxpayers Act. And I thought that those dominated. If I recall the complaint correctly, Your Honor, well, let me be clear. Which claims are you saying dominated? The fraud claims rather than the kickback claims. Well, the kickback claims are part of the fraud claims, Your Honor. It is the implied certification theory, which is how you get to the fraud claim. But for violating a federal act, you would not have a false claim. Can I ask you, which complaint are we supposed to be looking at, the original complaint or the amended complaint? You should look at the amended complaint. Even though it was filed after the case was removed. Well, actually, Your Honor, you could look to both complaints because they're inherently the same. If I recall correctly, I don't believe that… I think they're really different, and so I'm really struck by this. I think the first complaint, it says, oh, by the way, this is independently unlawful as a kickback. And it is entirely unclear from the face of the complaint that that loops back into the actual causes of action. And if I'm reading the record right, even the district court said, I don't know what you people are talking about with this kickback thing. Try again. And so then we get to the amended complaint, which I think is clearer about the theory, but also clearly loops in this idea that the certifications violated were false because both the federal and the state anti-kickback statute had been violated. So I think they are actually really different, although I'm not… So it matters to me which one we're supposed to be looking at. Okay, sure. Well, at the time that this case was removed, the Commonwealth was no longer a party. We had declined to intervene. But in reviewing the quest notice for removal, I did look at the complaint, and it appeared that the allegations were for violating the federal anti-kickback statute. Okay, but I still don't know what the answer to the question is. The first complaint or the second one? In other words, you look to the first complaint. Yes, you can look to the first complaint, Your Honor. May we look to the second one? Yes. Even though that's after the remand. It's still okay. Tell me why it's still okay to look at that. I think it's still okay to look at that complaint, Your Honor, because that is the complaint that was in question before the district court. Well, the complaint that was in question before the district court when the district court assumed jurisdiction was the first complaint, right? Yes, Your Honor. That was the initial complaint, and then the district court requested that the plaintiff file an amended complaint, which they did subsequently file. But the first complaint was the one that was removed. Yes, Your Honor. The first complaint would have been the one that was removed to federal court. How do you get around that flying pigs case? I would point the court back to the test in Grable and Gunn, and it presents a significant federal issue because it is Medicaid, and the significant federal issue would be that there is proper and consistent. Well, flying pigs was reportedly based on Grable and Gunn. Yes, Your Honor. That's our precedent. Flying pigs is our case. Yes, it is your case, Your Honor. And I would say that there's a significant federal issue here because of the proper and consistent resolution of state Medicaid law claims are an important federal interest. There's always federal dollars. The federal government has an interest in making sure that these cases are resolved in a consistent manner, and because the State False Claims Act closely mirrors the Federal False Claims Act, this federal government has an interest in making sure that their funds are also collected. I mean, it's almost as though you're arguing that there's a federal, a significant federal question raised by this motion for disbursement, whether or not there was one raised by the original complaint. I mean, if we thought there were a federal, a significant federal question necessary to resolution of this motion for disbursement, would that be enough for jurisdiction, or does the underlying complaint have to have supported federal jurisdiction? Well, while it is the Commonwealth's position that the federal court does have jurisdiction over the merits of the appeal, it would be for jurisdictional purposes the underlying complaint and the underlying action for which the court would have jurisdiction. So if we don't have jurisdiction, if we didn't have jurisdiction when this complaint was filed, first complaint, we don't have jurisdiction now, is that right? If this court were to find that the underlying action, that there was no jurisdiction to support the underlying action, then yes, that is the jurisdictional threshold question that the court would have to answer, and not the merits of the appeal. And that's one, but the subsidiary of that, and I guess I was trying to make two questions into one. So if we're talking about the first complaint, which was the complaint that was filed and where the federal court is acting, and then the federal court asks you or asks the plaintiffs to file a new complaint, do we have, do we look at the court's jurisdiction under the first one or the second one? I think initially you would look for jurisdiction under the first, but I think that it is clear that the federal court believed, the district court believed that it had jurisdiction. Yeah, but that doesn't really do it either. Each court has to, I mean, we made a term, we've done a jurisdiction, the Supreme Court decided we did. Yes, Your Honor. Each level you get. You're saying we don't need jurisdiction, we don't have jurisdiction when it's initially removed, we can acquire it later on? Or a court could acquire it. No, Your Honor, I do think that federal jurisdiction must exist, that it's not somehow acquired later. And as this court brought up, it's always the court's prerogative to find jurisdiction, look for jurisdiction at any point. And so I would just continue to point to the court that there are significant federal issues raised by Medicaid, which I do believe support jurisdiction for this particular case. But if we don't find it in that first complaint, we don't have jurisdiction, right? If the court were to find that there was no jurisdiction in the underlying action, then yes, there would not be jurisdiction. In the first complaint, though, that we have to look to, too. I mean, that's the only complaint that existed. Yes, Your Honor. When the case was filed. When the case was removed. If the court has no other questions, I will move to the merits of the appeal. Okay. A series of strategic litigation decisions have left the relators in this matter with no statutory or legal right to the federal share of the settlement or the settlement of claims that predated the Virginia fraud against taxpayers enacted. The district court correctly held that the Virginia Fraud Against Taxpayers Act is not retroactive and that the proceeds of the settlement means only the share belonging to the commonwealth that the commonwealth would actually be entitled to receive. And as such, we believe that the court of appeals should uphold the district court's ruling. And there are two questions as to whether or not relator's share was properly calculated. The first question is whether or not the statute was retroactive. And in this situation, the commonwealth would propose that the statute is not retroactive. The statute specifically says that it was effective on January 1st of 2003. And the statute in nowhere states that it should be retroactive. And especially in fraud statutes, retroactivity is not appropriate. Also, Your Honor, the time period that is at issue here, the claims that predate VFAT as enactment, relator would have no statutory right to a share from those claims. The commonwealth is able to release broader claims than just the Virginia Fraud Against Taxpayers Act. And that is what happened in this instance. In this instance, the settlement agreement spanned the time period of November 1st, 1997 to September 25th, 2014. The commonwealth has paid relators a generous 28% share of the total of the proceeds that the commonwealth is entitled to pay the relators a share from. The time period that occurred before the statute's enactment, the relators have no statutory right to those funds, and as such, the commonwealth did not disperse a relator's share. The second part of the analysis goes to the order of proceeds of the settlement. Proceeds of the settlement is clear in the statutory language. If proceeds did not mean something different in the context of settlement, then the legislature would not have needed to put proceeds into the statute at all. It would have just said that the relators receive a share of the settlement. But in this case, that's not what it says. It says proceeds of the settlement. And therefore, proceeds must inherently mean something, and it must mean something different than the settlement as a whole. Now, because this is a Medicaid case, we have separate funds between federal and state dollars. Again, using the bridge example, if this were a case where the fraud only had state dollars at issue, then proceeds of the settlement would mean the entire amount, because that is the only amount that the commonwealth is able to pay a relator's share from, and it would be all state dollars. In this instance, though, the pot of money is a mix of federal and state dollars, and the commonwealth is only able to pay the relators off of the portion of the settlement that belongs to the commonwealth, which is the state portion of the settlement. The federal portion of the settlement must be paid back to the federal government as an overpayment, and the commonwealth has no right to keep that money nor to pay a relator's share. And if the relators in this instance had wanted to have a share of the entire amount of the Medicaid settlement, then as is common practice, they would have also named the federal government and brought a Federal False Claims Act claim. In this instance, for whatever strategic litigation decision they made, they chose not to do that. They chose to only file under the Virginia Fraud Against Taxpayers Act, and as such, that is the portion of the settlement that they're entitled to receive. Does that argument that you're making now have something to do with the jurisdiction? No, Your Honor. That doesn't have to do with jurisdiction. Can I ask you a question about the share of the settlement that predated, you know, for the period predating the Virginia Fraud Against Taxpayers Act? How did you calculate that amount? How did you know how much of it was pre-2003 as opposed to after the effective date of the act? Sure. So when you – math is very complicated. So when you are looking at settlements, you look to what is called the FMAP, which means that we can look – it differs by the year, so there's a lot of analysis with the math that goes into it. But each year's FMAP is set out, and you're able to see how much of the amount is federal dollars versus state dollars. And so that was what we would do for each year in this case. Federal versus state I totally get. What I don't understand is I thought there was sort of a second kind of haircut for the amount of money that was attributable to the time period before the VFATA was enacted or became effective. Yes, Your Honor. Okay, so how did you figure out that part? That portion would be looking at the claims over the time period from 1997 to 2003, and the portion of the claims that would have been for the years that the Fraud Against Taxpayers Act was not in effect would be the portion of the settlement that the relators aren't entitled to. But how did you figure out? I don't understand. It looks like it's just a claim for years 97 to today. So how did you figure out how much of the money, you know, is attributable only to what I take it is the state's release of its common law claims? How did you do that? So we pull our data as submitted to the Department of Medicaid Assistance Services, and we have access to all of the claims that were filed for any particular year. And so the math is calculated based upon the claims that were submitted for each year. Okay. If it's pertinent to the court's review of this matter, I'm happy to, in the next couple of days, get together a more detailed analysis of how the math works in that instance. Is it somewhere in the record? No, Your Honor. The specific calculation would not be in the record. The distribution of proceeds would be contained, would be at the end of the Commonwealth's initial opening brief. I found the chart with the numbers on it. I just couldn't figure out where the numbers came from. I don't understand that there's a claim in this case that the numbers are incorrect. No, there's no. It's just the premise that's being challenged. Yes, the premise that's being challenged is that the relator, their position is that they should receive a share of the entire amount of the settlement. And the Commonwealth's position is that we have no authority to pay off of funds that don't belong to the Commonwealth because they're federal dollars. And at any point in the proceedings so far, has there been a claim that, look, even giving you your premise that we get a discount for the years before 2003, we don't know where you're getting your numbers or has... No, Your Honor. Okay. So having made these strategic litigation decisions that have ultimately impacted the share that they received from the Virginia Fraud Against Taxpayers Act, neither this relator nor future relators should be able to escape the consequences of those decisions by now arguing after the fact before the court that they are somehow entitled to both federal and state dollars in a Medicaid recovery when they chose not to name the federal government at the outset of the case. And it's for these reasons that we respectfully request that this court affirm the district court's ruling. Thank you very much. Thank you. Thank you. I'd like to start again really briefly with the jurisdictional issue. Which one of these issues do you think is the hardest? The merits or the jurisdiction? I would have told you the merits, but apparently I would have told you the merits. You would have told us the merits? I may have read that incorrectly. With respect to the jurisdictional issue, I want to clarify... Nobody thought of the jurisdictional issue until you got that order from us saying you ought to brief it here before court starts. And that is correct, Your Honor. We thought about it when the notice of removal was filed as to whether we could remand it and elect it not to. With respect to jurisdiction... How come nobody briefed it then? It was not briefed at all. I don't know. If nobody thought of it, why did they brief it? It was never briefed before this court requested the briefing. So with respect to the jurisdictional issue, the first thing I want to make clear for the record is that the violation of the federal anti-kickback statute is not pled in the alternative as a purely alternative theory of recovery. The universe of claims that would be tainted by kickbacks are not necessarily the same as the universe of claims that would qualify as overcharges under the state law theory. They're independent theories of liability. And had we gone through a full trial and prevailed on the state law theory, that would not necessarily have covered everything that we could have prevailed on under the federal kickback theory. So where in the original complaint did you plead that? That's... I thought before you gave us a... I think it was JA-71. 71? Is that what you said? That's the one you gave to us before. That's correct.  And the allegation in paragraph 28 on JA-71 is that the practices are independently unlawful as kickback schemes strictly prohibited pursuant to 42 U.S.C. 1328-7B. But then what's confusing for me at least is when you get to the causes of action, there's not a cause of action for violation of the anti-kickback statute. So what's going on there? You're exactly right, Judge Harris. With respect to a private cause of action under the federal anti-kickback statute, that's not something that the relator can bring under state or federal law. It is merely an avenue, a theory of liability under the VFATA, also under any other state's false claims act or the federal false claims act. But there is no independent cause of action. I understand that, but when I look at the causes of action, there's nothing even referring back to it. If I were the district court judge, I would have looked at this and thought, there's no federal... what federal question? So how is... what puts someone on notice that, oh no, there's really going to be an issue here about the anti-kickback statute? The allegation in the complaint that the discounts constitute kickbacks that are illegal under that statute. In terms of the... I think Your Honor is correct that that is not specifically referred to in the causes of action in those paragraphs. Those paragraphs, those causes of action do incorporate the prior allegations in the complaint. I know. And there's no other paragraph in the complaint that sort of ties these things together. That's... I mean, I'm having the same problem the district court did where he said, I don't understand the kickback thing. Explain it to me better. And I thought in the amended complaint, I understood it better. But... so I've got this page 71 and then I've got the causes of action. Is there anything else that sort of explains it's because there was this violation of the anti-kickback statute, that's what makes them false statements under the second cause of action? Or is that it? No, that is... you have identified what is in the joint appendix before this court. I think Your Honor is correct that that was more clearly laid out in the amended complaint filed seven years after the original one was, something like that. And... Well, you would agree that we can't look at the amended complaint to find whether or not there's jurisdiction, right? The question of whether removal was... I do agree that the question of whether federal question jurisdiction existed, significant federal question jurisdiction existed, is based on the allegations in the complaint at the time it's removed. The fact that that complaint was subsequently dismissed at Rule 12 and then replayed in an amended complaint, the theories in the amended complaint didn't change. Those theories were there. I think Judge Harris is probably right that it's more artfully done the second time around. And so with respect to that, I do agree that you have to look at the amended complaint to determine that jurisdiction existed with the district court. No, you have to look at the initial... I'm sorry. You're correct, Judge Moss. I misspoke. The initial complaint. And Judge King, with respect to your question on flying pigs earlier, one of the things that that case distinguishes that situation from this one is that there was no issue of federal law raised. The question in flying pigs was who owned the trademark. And as Your Honor wrote in flying pigs, trademark ownership is not acquired by federal or state registration. Ownership rights flow from prior use. Yes, but the analogy is that you were so relying on the Medicaid laws in the same way that they were relying there on... Your case rises and falls on whether this thing on 71 gives you federal jurisdiction. And I agree, but I think it's very... It's not the Medicaid laws. That's the analogy to Judge King's case. With respect to the Medicaid laws in terms of the fact that it's a federally funded program, I think Your Honor is correct. But the question of whether the federal statute was violated is an issue of federal law. With respect to flying pigs, there was no question of whether the Lanham Act provided any ownership rights. The question of ownership rights was based on use. That's not a federal issue. And so I think that the flying pigs case is a little bit different with respect to that. And then the last thing I want to address very briefly is Judge Harris' question with respect to the pre-2003 claims. First, I think it's important to note that retroactivity isn't the issue here. The question is, what did the defendant pay to settle the lawsuit? Everybody agrees the statute isn't retroactive. Second, Judge Harris, you're correct to note that we disagree with the premise. We think that's wrong. It was an improper reduction or haircut, as you said. But there's also no factual basis in the record as to why that amount was an appropriate amount to be reduced. And so with respect to that, I don't think there was a factual basis for the court as an alternative theory to find that that was improper. Is that something you raised below? Or before us? I don't recall whether it was raised below or not. It was raised in the statement of issues before the court that there was no factual basis for how that apportionment was made. I'm sorry, the statement of issues before? In this court, in our opening. You didn't make any argument that they calculated it wrong. Your argument was they're not entitled to that. And that is certainly the first response, and that is, I think, all the court needs. If the court determines that they were entitled to do that, we don't know how it was calculated, and I think it could be sent back to make that determination. Thank you very much. We will take a brief recess, but before that we'll conclude.
judges: Diana Gribbon Motz, Robert B. King, Pamela A. Harris